UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

JASON F. SMITH                                                                PLAINTIFF

V.                        NO. 1:19CV00070-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]
DEFENDANT

## ORDER

### I.   Introduction:

On July 18, 2016, Plaintiff, Jason Smith ("Smith"), applied for disability benefits, alleging disability beginning on August 26, 2015. (Tr. at 12). On November 20, 2018, following a February 22, 2018 hearing, the Administrative Law Judge ("ALJ") found that Smith was disabled from August 26, 2015 through January 19, 2017; however, the ALJ found that beginning on January 20, 2017, Smith's medical condition had improved to the point that he was no longer disabled. (Tr. at 23-28). The Appeals Council denied Smith's request for review, making the ALJ's partial

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

denial of his application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Smith had not engaged in substantial gainful activity since his alleged onset date of August 26, 2015. (Tr. at 16). The ALJ found at Step Two that Smith had the following severe impairments: degenerative disease of the hip and obesity. *Id*.

On November 20, 2018, the ALJ found that Smith was disabled beginning August 26, 2015, through January 19, 2017. (Tr. at 16-23). However, the ALJ found that beginning January 20, 2017, Smith's medical condition had improved to the point that he was no longer disabled.[3]  (Tr. at 23).

The ALJ found that Smith had not developed any new impairments since the date his disability ended; thus, the impairments of degenerative disease of the hip

---

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[3] An ALJ's finding of medical improvement requires an analysis as follows: (1) does the claimant have any new impairments since the date his disability ended; (2) do the claimant's impairments meet or equal a Listed Impairment; (3) has medical improvement occurred; (4) has there been an increase in the claimant's RFC; (5) can the claimant perform past relevant work; and (6) can the claimant perform substantial gainful work activity in the national economy. (Tr. at 14-28); 20 C.F.R. § 404.1594.

and obesity remained. *Id*. The ALJ determined that Smith's impairments did not meet or medically equal a Listed Impairment, and that medical improvement occurred as of January 20, 2017.[4] *Id*.

The ALJ determined that, beginning January 20, 2017, Smith had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that he could only occasionally stoop, kneel, bend, balance, crouch, and crawl, and he would require an indoor work environment. *Id*. Additionally, Smith would require the use of a cane, and he would be limited to unskilled work with simple, routine, and repetitive tasks and supervision that is simple, direct, and concrete. (Tr. at 24).

The ALJ found, based upon Smith's RFC, that he was unable to perform his past relevant work. Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that, based on Smith's age, education, work experience and RFC, jobs existed in significant numbers in the national economy which he could perform, including work as a call out operator and a telephone quote clerk. (Tr. at 28). Thus, the ALJ concluded that Smith had not become disabled again since January 20, 2017. *Id*.

---

[4] The ALJ's analysis of the medical evidence as a whole supports his finding of medical improvement (see discussion below).

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

### B.   Smith's Arguments on Appeal

Smith contends that substantial evidence does not support the ALJ's decision to deny his application for benefits. He argues that: (1) the RFC as of January 20, 2017 did not fully incorporate his limitations; (2) the ALJ improperly discounted the medical statements made by Dr. Merwin Moore, M.D., Smith's surgeon; and (3) the Appeals Council should have remanded the case based on evidence it received after the hearing.

Smith certainly suffered from problems related to his left hip. He underwent a total hip replacement on August 26, 2015, and a revision surgery in October 2016. (Tr. at 19, 941-954). At the end of 2016, Dr. Moore said that Smith could return to weight bearing as tolerated and resume driving. (Tr. at 941-943). On January 10, 2017, Smith told Dr. Moore that he was eager to increase weight bearing and had very little pain. (Tr. at 20). He said a shoe insert helped and he felt more balanced. (Tr. at 954). Most of his pain was occurring at night. *Id*. Smith also told Dr. Moore that he had not attended physical therapy as recommended.; likewise, he did not see a pain management specialist. The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir.

1993). *Id*. In February 2017, Smith told Dr. Moore that he had been full weight bearing for five weeks. (Tr. at 1204).

X-rays of the left hip in September 2017 and April 2018 revealed no acute deficits, but Smith's doctor recommended a hip injection, which Smith said was helpful. (Tr. at 967, 1080-1082, 1197-1203). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While Smith told Dr. Moore that he had fallen in February 2018, Dr. Moore stated that surgery was not indicated. (Tr. at 1198). In February 2018, at a doctor's visit, the only problems listed were obesity, kidney stones, and knee pain. (Tr. at 1195).

A large component of this case is the clear indication that Smith's post-surgery pain does not preclude all activity. Smith admitted that he works almost seven days a week at his local church, where he is senior pastor (he leads services twice a week for one to two hours, in addition to his other duties). (Tr. at 64-66). He has done so for the last seven years. He also home schools his three children. (Tr. at 60). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Indeed, while Smith did not live pain-free during the relevant time-period, he carried on with normal activities, which required significant functional ability.

Smith alleges that the RFC for simple sedentary work outstripped his abilities. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ discussed clinical findings, he considered Smith's conservative treatment after the second surgery, and he assessed Smith's abilities to perform daily activities requiring significant physical exertion. (Tr. at 20-28). The RFC assigned by the ALJ was appropriate based on the record as a whole.

While Dr. Moore did not fill out a medical source statement with any functional assessment, he did write a clinic note in February 2018 stating that Smith may never regain full strength in his hip and would have limitations on his activities. (Tr. at 1198). The ALJ discounted this statement to a degree, with good reason. At an appointment with Dr. Moore in February 2017, Smith said he had been full weight-bearing for five weeks. (Tr. at 1204). At a September 2017 appointment, Dr. Moore noted that Smith's gait was normal and he did not walk with an assistive device. (Tr. at 1200). Smith said he was ambulating better with a shoe insert. *Id.* In

7

April 2018, Dr. Moore noted no assistive device and normal hip x-ray. (Tr. at 1203). These notations from clinic visits indicate that Smith was not as limited as he argues, and they undercut Dr. Moore's restrictive opinion. The ALJ gave Dr. Moore's statement "some weight," and subsequently limited him to sedentary work with postural limitations, showing he credited some of Smith's complaints of pain.

Finally, Smith argues that the evidence he submitted to the Appeals Council should have been given more weight. The evidence submitted related to a clinic visit with Dr. Moore on December 20, 2018, a month after the ALJ issued his decision. (Tr. at 40-44). Dr. Moore reiterated his opinion that Smith would be limited by his hip problem, but he also said that he would do anything he could to help Smith win disability benefits: "I will do whatever I can to help Smith get the benefits he deserves." (Tr. at 40). First, the opinion is not all that different from others issued by Dr. Moore, which were given some weight by the ALJ and factored into the RFC; also, hip x-rays were unchanged at the December 2018 appointment, so no deterioration was evident in an objective sense. (Tr. at 40-44). Finally, when a claimant sees a doctor for the purpose of building his disability case, a Court has every reason to be wary. *Hurd v. Astrue*, 621 F.3d 734, 739 (8th Cir. 2010). Dr. Moore's own notes were inconsistent with his restrictive opinions, which appear to

have been authored for the purpose of securing Smith financial gain. The Appeals Council did not err in declining review.

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC fully incorporated Smith's limitations, the ALJ gave proper weight to the statements of Dr. Moore, and the Appeals Council's decision was sound.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Smith's Complaint is DISMISSED, with prejudice.

DATED this 10th day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE